KATHLEEN J. PHILPOT, PERSONAL REPRESENTATIVE OF THE ESTATE
OF CHRISTOPHER A. PHILPOT, DECEASED, APPELLANT,
V. BIAGIO AGUGLIA, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF LINDA S. AGUGLIA,
DECEASED, AND ENTERPRISE RENT-A-CAR
COMPANY - MIDWEST, APPELLEES.

611 N.W. 2d 93

Filed May 26, 2000. No. S-99-235.

Douglas L. Kluender, Stephen L. Ahl, and Fred B. Campbell, Jr., of Wolfe, Snowden, Hurd, Luers & Ahl, for appellant.

Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., for appellee Enterprise Rent-A-Car - Midwest.

Stephen S. Gealy and Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees Biagio Aguglia and Estate of Linda S. Aguglia.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This case requires us to decide whether a 1997 Dodge Grand Caravan (minivan) is a "truck" under the leased truck and trailer

liability provision found at Neb. Rev. Stat. § 25-21,239 (Cum. Supp. 1998).

Kathleen J. Philpot, plaintiff-appellant, brought this action seeking damages following a two-vehicle collision. At the time of the collision, Linda S. Aguglia (Linda) was operating the minivan which her husband, defendant-appellee Biagio Aguglia, had rented from Enterprise Rent-A-Car Company - Midwest (Enterprise). Philpot sought to impose liability on Enterprise under § 25-21,239. Philpot argues that Enterprise, as a lessor of the minivan, is jointly and severally liable for the alleged wrongful death of her husband, Christopher A. Philpot (Christopher), because the minivan that Linda was driving at the time of the collision was a leased truck under § 25-21,239. Enterprise filed a motion for summary judgment, contending that the minivan was not a truck and that therefore, § 25-21,239 was not applicable. The district court sustained Enterprise's motion for summary judgment. We agree with the district court that as a matter of law, the minivan is not a truck and that § 25-21,239 does not apply. We therefore affirm.

## BACKGROUND

As a preliminary matter, we note that exhibit 33, Aguglia's deposition, was withdrawn by Philpot for the purposes of Enterprise's motion for summary judgment. We do not consider exhibit 33 in our analysis.

In November 1997, Christopher and Linda were involved in a car collision that claimed both their lives. Linda was driving the minivan that was owned by Enterprise and leased by Aguglia. Philpot sought to impose liability on Enterprise under § 25-21,239.

The minivan Linda was driving at the time of the collision was registered in the State of Nebraska as a passenger car. It was equipped with a seating arrangement for seven to eight passengers, which included two seats in the front of the vehicle, a bench-style seat immediately behind the front seats, and a second bench-style seat immediately behind the first bench-style seat. Approximately 90 percent of the floorspace available in the minivan was designed for occupancy by passengers, not for property or cargo. It was equipped with an automatic transmis-

sion, air conditioning, power steering, cruise control, a tilt steering wheel, power brakes, power windows, power door locks, two doors on each side for a total of four passenger doors, dual air-conditioning controls for passengers in the middle and back seats, and an AM/FM stereo radio with a cassette player. In addition, the entire interior of the minivan was carpeted and all seats were upholstered. In contrast to the minivan, Dodge produces a cargo van which is equipped with only two seats and an open area for hauling cargo.

## ASSIGNMENTS OF ERROR

Philpot assigns as error the district court's ruling that (1) there was no genuine issue of material fact and (2) the minivan was not a truck under § 25-21,239.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Callahan v. Washington Nat. Ins. Co., ante* p. 145, 608 N.W.2d 592 (2000).

## ANALYSIS

Philpot argues that Enterprise, as a lessor of the minivan, is jointly and severally liable for Christopher's alleged wrongful death because the minivan that Linda was driving at the time of the collision was a leased truck under § 25-21,239. Enterprise argues that the minivan it leased to Aguglia was not a truck because it was not designed, used, or maintained primarily for

the transportation of property. Section 25-21,239 provides in relevant part:

> The owner of any truck, truck-tractor, whether with or without trailer, or trailer, leased for a period of less than thirty days or leased for any period of time and used for commercial purposes, shall be jointly and severally liable with the lessee and the operator thereof for any injury to or the death of any person or persons, or damage to or the destruction of any property resulting from the operation thereof in this state[.]

A statute is open for construction to determine its meaning only when the language used requires interpretation or may reasonably be considered ambiguous. *Affiliated Foods Co-op v. State, ante* p. 549, 611 N.W.2d 105 (2000); *Neb. Account. & Disc. v. Citizens for Resp. Judges*, 256 Neb. 95, 588 N.W.2d 807 (1999). Section 25-21,239, by its terms, applies only to leased trucks, truck-tractors, and trailers. It does not apply to any other type of motor vehicle.

Neb. Rev. Stat. § 60-674 (Reissue 1998), of the Nebraska Rules of the Road, provides that "[t]ruck shall mean any motor vehicle designed, used, or maintained primarily for the transportation of property." The definition of the term "truck" found at § 60-674 is relevant in determining the scope of § 25-21,239 because that provision and the Nebraska Rules of the Road share the common legislative purpose of increasing highway safety. The purposes of the Legislature in enacting § 25-21,239 were for the promotion of highway safety and the financial protection of innocent traffic victims. See *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976). Likewise, certain goals of the Nebraska Rules of the Road are to promote economic savings by relieving congestion and confusion in traffic, to increase the efficiency of streets and highways by the application of uniform traffic control devices, and to reduce the huge annual loss of life and property which occurs on Nebraska's highways. Neb. Rev. Stat. § 60-602 (Reissue 1998). Since the legislative purposes behind the rules of the road closely resemble the legislative purposes behind § 25-21,239, the definition of "truck" found in § 60-674 is relevant to determining the scope of § 25-21,239.

Under § 60-674, Philpot argues that this court should focus on the use of the vehicle at the time of the collision. We reject this argument. The statute defines a truck as a vehicle that is designed, used, or maintained *primarily* for the transportation of property. This implies that the relevant inquiry in the determination of whether a vehicle is a truck is the general use to which the vehicle is put, not the actual use by a particular driver.

The record shows that the minivan involved in the collision was equipped with a seating arrangement for seven to eight passengers. There were two seats in the front of the vehicle, and two rows of bench-style seats behind them. Approximately 90 percent of the floorspace available in the minivan was designed for occupancy by passengers, not for property or cargo. In addition, the minivan was equipped with features ordinarily intended to provide for the comfort of the passengers, such as air conditioning, power door locks, and power windows. From this evidence, it is clear that the minivan was designed, used, and maintained primarily for the transportation of persons, and not for the transportation of property.

At the time of the collision between Christopher and Linda, there was another statutory definition of the term "truck" found at Neb. Rev. Stat. § 60-301(29) (Cum. Supp. 1996), entitled "Motor Vehicle Registration." It provides that the term "[t]rucks means motor vehicles equipped or used for the transportation of property." *Id.* This definition is irrelevant to determining whether the minivan is a truck, however, because the motor vehicle registration statute deals only with regulation of motor vehicles upon the highway. See *Paltani v. Sentinel Life Ins. Co.*, 121 Neb. 447, 237 N.W. 392 (1931) (statute dealt only with regulation of motor vehicles upon highway and definition of word "truck" therein did not become part of insurance contract). The motor vehicle registration provisions do not contain a statement of legislative purpose aimed at increasing highway safety. Therefore, the definition of "trucks" found at § 60-301(29) does not help to determine the scope of § 25-21,239.

Moreover, the record indicates that the minivan Aguglia leased from Enterprise was registered in the State of Nebraska as a passenger car. Under § 60-301(21), a "[p]assenger car means a motor vehicle designed and used to carry ten passen-

gers or less and not used for hire." As mentioned, the minivan was designed to carry seven to eight passengers. It clearly fits within the category of a passenger car for registration purposes. The definition of the term "truck" for motor vehicle registration purposes is irrelevant to the determination of whether the minivan is a truck for purposes of § 25-21,239.

Our determination that the minivan is not a truck comports with the decision in *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976), in which this court held that § 25-21,239 (then found at Neb. Rev. Stat. § 39-6,193 (Reissue 1974)) was not unconstitutionally vague for lack of a definition of the word "truck." In *Bridgeford,* this court noted that there had been a statutory definition of the word "truck" since 1919. In addition, *Bridgeford* noted that "[t]he word 'truck' is a term of common understanding, and men of normal intelligence would not necessarily have to guess at its meaning nor would they usually differ as to its application." 195 Neb. at 320, 238 N.W.2d at 450-51.

A minivan, such as the 1997 Dodge Grand Caravan, would not normally be viewed as falling within the scope of § 25-21,239. A minivan is more likely to be used to transport passengers than to transport cargo. A minivan's use is not generally subject to the same dangers as that of a larger truck, such as being loaded with inadequately secured cargo. See *Bridgeford v. U-Haul, supra.* There is also no indication that the Legislature intended to include this kind of vehicle within the statute's coverage. By its terms, § 25-21,239 applies only to trucks, truck-tractors, and trailers.

## CONCLUSION

We conclude, as a matter of law, that the minivan that Aguglia leased from Enterprise is not a truck under § 25-21,239. There are no material issues of fact, and Enterprise is entitled to judgment as a matter of law. We therefore affirm.

AFFIRMED.